T.C. Memo. 2003-180

UNITED STATES TAX COURT

RAY W. AND MARILYN S. SOWARDS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10025-99, 11144-00.        Filed June 19, 2003.

<u>David M. Kirsch</u>, for petitioner Ray W. Sowards.

<u>Basil J. Boutris</u>, for petitioner Marilyn S. Sowards.

<u>Andrew R. Moore</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  These cases were consolidated by motion of the
parties for purposes of trial, briefing, and opinion.  Respondent
determined deficiencies in petitioners' Federal income taxes,

additions to tax pursuant to section 6654,[1] accuracy-related penalties pursuant to section 6662(a), and fraud penalties pursuant to section 6663 for the taxable years 1995, 1996, and 1997, in the following amounts:

| Year | Deficiency | Additions to Tax Sec. 6654 | Penalties Sec. 6662(a) | Sec. 6663 |
|------|-----------|------|------|------|
| 1995 | $98,690 | -- | $19,738.00 | -- |
| 1996 | 61,038 | $305.73 | 1,150.80 | $41,463.00 |
| 1997 | 24,818 | 66.23 | 774.60 | 15,708.75 |

After a concession by respondent the issues to be decided are as follows:

(1) Whether funds deposited into a bank account held in the name of a purported trust are taxable income for the taxable years 1995, 1996, and 1997 in the respective amounts of $58,057, $149,774, and $58,622;

(2) Whether petitioners failed to report $7,725 as additional income in 1997 relating to petitioner Ray Sowards's law practice;

(3) Whether respondent erroneously disallowed deductions for expenses allegedly incurred in 1996 and 1997 relating to petitioner Ray Sowards's law practice;

---

[1]All section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(4) Whether respondent erroneously disallowed deductions for expenses allegedly incurred in 1996 relating to petitioner Marilyn Sowards's purported organizational consulting business;

(5) Whether petitioner Ray Sowards is liable for fraud penalties pursuant to section 6663 for the taxable years 1996 and 1997;

(6) Whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a) for the taxable years 1995, 1996, and 1997;[2]

(7) Whether petitioners are liable for additions to tax for failure to pay estimated tax pursuant to section 6654 for the taxable years 1996 and 1997;[3] and

(8) Whether petitioner Marilyn Sowards is entitled to relief from joint and several liability pursuant to section 6015 for the taxable years at issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the second stipulation of facts, the stipulation of settled issues, and the attached exhibits are

---

[2]Respondent determined a negligence penalty pursuant to sec. 6662(a) for 1995 premised upon the entire amount of the deficiency. With respect to 1996 and 1997, respondent determined negligence penalties as an alternative to the fraud penalty and for the deficiency amounts related to lack of substantiation.

[3]Petitioner Ray Sowards concedes the applicability of this addition to tax based upon the Court's opinion and computation under Rule 155.

incorporated herein by this reference. At the time of filing the petition, petitioners resided in San Jose, California. Petitioners have been married to each other since 1969. At the time of filing the petition, petitioners were in the process of dissolving their marriage; they have lived in separate abodes since 1997.

Petitioner Ray Sowards (Mr. Sowards) worked for Pacific Gas and Electric (PG&E) until he became disabled in the mid-1980s. He received disability income from PG&E during the years at issue. Mr. Sowards graduated from Lincoln Law School in 1985. He was a licensed attorney in the State of California at the time the returns at issue were filed. Additionally, during the aforementioned period, Mr. Sowards was admitted to practice before this Court.

After graduating from law school, Mr. Sowards opened a law practice. His practice concentrated on what he described as asset protection. In or about the end of 1993 or 1994, Mr. Sowards became acquainted with Robert Strong (Mr. Strong). Mr. Strong operated a business entity known as System Two Limited (STL). STL was in the tax and financial services business, and it prepared tax returns. As part of this business, STL promoted business trusts. STL's promotion activities included seminars. Mr. Sowards participated in these promotion activities. During the years at issue, Mr. Sowards worked at an office located at

STL's place of business.  Mr. Sowards went to his STL office on a regular basis.

Mr. Sowards, STL, and Mr. Strong had a close business relationship.[4]  Mr. Sowards, Mr. Strong, and STL referred clients among themselves.  Mr. Sowards performed legal services for STL and advised many of STL's clients.[5]  Mr. Sowards traveled and assisted Mr. Strong with seminars promoting STL's services conducted in Ohio, Hawaii,[6] Alaska, and Texas.  STL reimbursed Mr. Sowards for business and travel expenses.  STL also provided Mr. Sowards with an American Express credit card.

On or about June 1, 1994, Mr. Sowards, with the assistance of Mr. Strong, purportedly created an intervivos trust named Wealth Preservation Assistance (WPA).  Mr. Sowards was the sole grantor of WPA.[7]  The trust document states that WPA's business purpose is "diversification of business activities and business assets for planned constructive growth."

---

[4]Petitioner Marilyn Sowards (Ms. Sowards) testified that Mr. Strong and her husband had a contract relationship.

[5]Mr. Sowards testified that he performed these legal services as a courtesy and on a pro bono basis.

[6]In one of the years at issue, Mr. Sowards traveled to Hawaii as many as nine times to assist Mr. Strong with the STL seminars.

[7]Mr. Sowards testified that there were three main reasons for establishing WPA:  (1) For use in doing charitable, pro bono legal work; (2) for use on some minor business transactions; and (3) for use in estate planning.  WPA was never used for charitable purposes or as a business entity.

Mr. Sowards purportedly assigned certificates of beneficial interest in WPA to his wife, Ms. Sowards, and their six children.[8]  Mr. Sowards did not inform his wife or children of their purported beneficial interests in WPA.

Mr. Sowards opened and maintained a bank account under the WPA name at the Bank of Milipitas, account No. 1109898 (WPA's bank account).  He had sole signatory authority over WPA's bank account.  During the relevant years, Mr. Sowards controlled and made all day-to-day decisions regarding WPA.  Ms. Vera Morris (Ms. Morris) was named sole trustee of WPA.  Ms. Morris was an employee of STL and the mother-in-law of Mr. Strong.  WPA did not file Federal income tax returns for 1995, 1996, or 1997.

For the tax years at issue, STL issued checks to WPA approximately every week.  On an approximately weekly basis, Mr. Sowards submitted statements to STL for the WPA payments he received.  The dated statements read "To: System Two Limited," "From: WPA," "For: Legal Compliance" and list an amount "Due".  The statements for 1996 and 1997 list total amounts due to WPA from STL of $131,700 and $46,853.52, respectively.

---

[8]Mr. Sowards purportedly assigned the following percentages of beneficial interest in WPA to the following members of his family, 25 percent to his wife and 12.5 percent to each of his six children: Jared V. Sowards, Benjamin J. Sowards, Rachel H. Sowards, Emily M. Sowards, Nicolas L. Sowards, and Julie A. Sowards.

Additionally, Mr. Sowards submitted reimbursement requests to STL for expenditures for gasoline.

During 1995, STL issued 65 checks made payable to WPA in the total amount of $65,833. All the aforementioned checks were deposited into WPA's bank account. During 1996, STL issued 56 checks made payable to WPA in the total amount of $128,000. All the aforementioned checks were deposited into WPA's bank account. During 1997, STL issued 19 checks in the total amount of $50,345 made payable to WPA. All the aforementioned checks were deposited into WPA's bank account.

In 1995, 1996, and 1997, Mr. Sowards wrote checks totaling $51,484.84, $121,685.21, and $62,876.44, respectively, from WPA's bank account. Most of the checks written on WPA's bank account were used to pay for his family's expenses. For example, Mr. Sowards wrote checks to his wife, Ms. Sowards, to the family's church, to a telephone company, to a mortgage lender, etc. Additionally, in 1995, 1996, and 1997, Mr. Sowards wrote checks made payable to cash in the total amounts of $2,800, $18,404.74, and $7,430, respectively.

Mr. Sowards also maintained a bank account at the Bank of the West, account No. 24054726[9] and a personal joint checking bank account with his wife at First Interstate Bank, account No.

---

[9]From the transactions stipulated by the parties, Mr. Sowards appears to have used this bank account for his law practice.

684-0-18497 (the joint checking account).[10]  Some of the funds deposited into WPA's bank account were subsequently transferred via checks to the joint checking account.  Petitioners used the funds in their joint checking account to pay for their living expenses.

In 1995, Mr. Sowards wrote 39 checks totaling $12,995 from WPA's bank account to Ms. Sowards.  In 1996, Mr. Sowards wrote 59 checks totaling $17,538 from WPA's bank account to Ms. Sowards. In 1997, Mr. Sowards wrote 28 checks totaling $12,047.20 from WPA's bank account to Ms. Sowards.  Ms. Sowards deposited the aforementioned checks into the joint checking account.  In 1997, petitioners borrowed $30,000 from a third-party lender.  Part of the loan proceeds was deposited into the joint checking account and used to pay, inter alia, credit card bills and home improvement expenses.[11]

On their 1996 return, petitioners included a Schedule C, Profit or Loss From Business, for "business consulting" that Ms. Sowards allegedly operated.  Respondent denied all the expenses associated with this business for lack of substantiation.  During respondent's examination, Revenue Agent Terry Daleiden (Agent Daleiden) questioned Mr. Sowards about this business and these

---

[10]Wells Fargo bank took over First Interstate Bank, and petitioners' account number changed to 0515-660033.

[11]On Apr. 16, 1997, $13,000 of the loan proceeds was also deposited into WPA's bank account.

expenses.  Mr. Sowards represented to Agent Daleiden that his wife performed paralegal services associated with his law practice.  Similarly, in responding to respondent's interrogatory concerning the substantiation of the business consulting expenses, Mr. Sowards answered: "All of petitioners' financial and tax data for the years in dispute were destroyed in a fire on April 8, 1998."  In his second set of interrogatories, respondent asked Mr. Sowards to "State what duties Marilyn Sowards performed as an organizational consultant during 1996."  Mr. Sowards responded: "Marilyn Sowards performed light filing and mailing."  However, Ms. Sowards never had a consulting business.  Mr. Sowards fabricated the business.[12]

On their 1996 and 1997 returns, petitioners included Schedules C for Mr. Sowards's law practice.  On these Schedules C, petitioners claimed deductions for expenses of $11,197 and $14,805 for 1996 and 1997, respectively.  Respondent denied all of petitioners' claimed deductions for lack of substantiation.  Additionally, respondent imputed additional income of $7,725 in 1997 to petitioners from the law practice utilizing the bank deposits method of income reconstruction.

---

[12]Mr. Sowards testified at trial that the income and expenses shown on his wife's Schedule C were from his law practice and that he reported them on his wife's Schedule C to get credit for Social Security purposes.  Ms. Sowards did not know of the claimed existence of "her" fabricated organizational consulting business until the Internal Revenue Service (IRS) commenced the examination of petitioners' returns.

Ms. Sowards graduated from Brigham Young University in 1969 and thereafter attended Cal-State Hayward for 2 years. She has never taken an accounting course. During the years at issue, Ms. Sowards was a stay-at-home mother and homemaker. Her work history consists of 2 years of teaching primary school in or about 1969, 2 years as a reading specialist in a primary school after petitioners' separation in 1997, and 2 months as a nanny in 2000.

Ms. Sowards knew little of her husband's business affairs. Her husband refused to provide and discuss with her any information concerning his finances. For example, she had no knowledge of the alleged loan agreement by and between Mr. Strong/STL and her husband. She was unaware that WPA was a trust of which she and her children were the named beneficiaries. As both petitioners testified, she was never given a copy of the shares of beneficial interest. Her husband told her that WPA was the name he gave his law practice's "operating" bank account.[13] She believed that the approximately weekly checks written to her from the WPA account were drawn on the law firm's business account. She testified that she never knew how much money her husband was making and that the family lived "month-to-month". She had no access to WPA bank account statements. She did know,

---

[13]Ms. Sowards testified that upon questioning her husband about the name, "he just said that WPA would mean something to the elderly, something from the war days."

however, that her husband would separately write WPA checks for her children's needs such as tuition, rent, etc.

Ms. Sowards did not participate in the preparation of the couple's tax returns except for a few conversations with the tax-return preparer concerning, for example, the number of charitable deductions. She never reviewed the tax returns; her husband told her to simply sign the returns. Petitioners expended no moneys on lavish items.

In the spring of 1997, STL moved its offices to a new location in Fremont, California. Mr. Sowards did not move with STL. After STL moved its offices, Mr. Sowards performed no further business services for STL and ceased receiving STL checks written to WPA.[14]

Mr. Jesus Flores (Mr. Flores) prepared petitioners' 1995 and 1997 returns. Petitioners' 1996 return was prepared by American Tax Professional. Mr. Sowards never mentioned WPA or STL to Mr. Flores.

## OPINION

### A.  Burden of Proof and Section 7491(a)

Mr. Sowards[15] argues that respondent bears the burden of proof with respect to factual matters because:  (1) The

---

[14]Ms. Sowards testified that her husband lost his contract with STL.

[15]Ms. Sowards did not advance any argument concerning the applicability of sec. 7491.

examination of petitioners' returns commenced after July 22, 1998; (2) Mr. Sowards introduced credible evidence as to all contested issues; (3) he complied with all substantiation requirements; and (4) he cooperated with respondent's reasonable requests. Respondent argues that with regard to petitioners' 1995 return, section 7491 is inapplicable since the examination commenced prior to the effective date. Respondent relies upon Agent Daleiden's testimony that the first contact letter was sent to petitioners in April of 1998. With respect to 1996 and 1997, respondent argues that petitioners have failed to comply with the requirements of section 7491(a)(2)(A) and (B). For the reasons detailed below, we find the burden of proof does not shift to respondent.

Generally, a determination made by the Commissioner in a notice of deficiency issued to the taxpayer is presumed correct, and the taxpayer bears the burden of proving that determination incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, section 7491(a)(1) provides that if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the tax liability of the taxpayer, the burden of proof shifts to the Commissioner with respect to that issue. Section 7491(a) was added to the Code by the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3001, 112 Stat. 726.

Section 7491(a)(1) applies in court proceedings arising only in connection with examinations commencing after July 22, 1998.[16] See RRA 1998 sec. 3001(c), 112 Stat. 727. Agent Daleiden's first contact letter regarding 1995 was mailed to petitioners in April 1998. Accordingly, respondent's examination of petitioners' 1995 return commenced prior to the effective date of section 7491. Seawright v. Commissioner, 117 T.C. 294 (2001). Thus, we find section 7491 inapplicable to petitioners' 1995 return.

Since the examination of petitioners' 1996 and 1997 returns commenced after the effective date of section 7491, we must consider the provisions of that section. The burden of proof will shift to the Commissioner only after the taxpayer introduces "credible evidence" with respect to a factual issue relevant to ascertaining the taxpayer's income tax liability. See sec. 7491(a). The statute fails to define what constitutes "credible evidence". The conference committee report assists in determining its intended meaning:

---

[16]The House conference report states:

An audit is not the only event that would be considered an examination for purposes of this provision. For example, the matching of an information return against amounts reported on a tax return is intended to be an examination for purposes of this provision. Similarly, the review of a claim for refund prior to issuing that refund is also intended to be an examination for purposes of this provision. [H. Conf. Rept. 105-599, at 242 (1998), 1998-3 C.B. 747, 996.]

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof. [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

See Higbee v. Commissioner, 116 T.C. 438 (2001). In support of his position that amounts received from STL were loans, Mr. Sowards offered only his self-serving testimony and an alleged loan document. We find that Mr. Sowards was not a credible witness; his testimony was vague, inconsistent, and implausible. Further, as detailed infra, we find that the payments from STL were received for services that Mr. Sowards rendered. Mr. Sowards also failed to present credible evidence that other deposits to his bank accounts were not taxable income or that deductions disallowed by respondent should be allowed. As such, we find that Mr. Sowards failed to present credible evidence. See Higbee v. Commissioner, supra; Tokh v. Commissioner, T.C. Memo. 2001-45, affd. 25 Fed. Appx. 440 (7th Cir. 2001).

In addition, the application of section 7491(a)(1) is limited by section 7491(a)(2), which provides in pertinent part:

> SEC. 7491(a). Burden Shifts Where Taxpayer Produces Credible Evidence.--

\*    \*    \*    \*    \*    \*    \*

(2).  Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews \* \* \*

One of the issues to be decided in this case is whether petitioners have adequately substantiated those expenses claimed on their returns and disallowed by respondent.  The legislative history of section 7491 explicates:

Nothing in the provision shall be construed to override any requirement under the Code or regulations to substantiate any item.  Accordingly, taxpayers must meet applicable substantiation requirements, whether generally imposed or imposed with respect to specific items, such as charitable contributions or meals, entertainment, travel, and certain other expenses. Substantiation requirements include any requirement of the Code or regulations that the taxpayer establish an item to the satisfaction of the Secretary.  Taxpayers who fail to substantiate any item in accordance with the legal requirement of substantiation will not have satisfied the legal conditions that are prerequisite to claiming the item on the taxpayer's tax return and will accordingly be unable to avail themselves of this provision regarding the burden of proof.  Thus, if a taxpayer required to substantiate an item fails to do so in the manner required (or destroys the substantiation), this burden of proof provision is inapplicable. [H. Conf. Rept. 105-599, supra at 241, 1998-3 C.B. at 995; fn. refs. omitted; emphasis added.]

As we find infra, petitioners failed to adequately substantiate those deductions claimed on their returns.

Accordingly, we find that the burden of proof with respect to the underlying deficiencies remains on petitioners.[17]

B.  Reconstruction of Petitioners' Income

   Unreported Income

In the notices of deficiency, respondent determined that petitioners had additional income for 1995, 1996, and 1997 of $58,057, $149,774, and $66,347, respectively.  In the case of 1995, all additional income is attributable to money that STL transferred to WPA.[18]  For 1996 and 1997, the vast majority of the additional reconstructed income is attributable to STL payments to WPA.

Section 61(a) defines gross income as "all income from whatever source derived."  Every person liable for income tax must maintain books and records sufficient to establish the amount of his gross income.  Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  The Secretary is authorized and has great latitude in reconstructing income in accordance with any reasonable method that accurately reflects actual income.  Secs. 446(b), 6001; Petzoldt v.

---

[17]Of course, with regard to the fraud penalty, respondent bears the burden of proof.  Secs. 7491(a)(3), 7454(a); see discussion, infra.

[18]Although the evidence for 1995 shows total STL deposits into WPA's bank account of $65,833, in the notice of deficiency, respondent only determined additional unreported income of $58,057.  Respondent is not seeking an increase in the deficiency amount for 1995.

Commissioner, 92 T.C. 661, 687 (1989); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); see Taglianetti v. United States, 398 F.2d 558, 562 (1st Cir. 1968), affd. on other grounds 394 U.S. 316 (1969); Ramsey v. Commissioner, T.C. Memo. 1980-59; Bolton v. Commissioner, T.C. Memo. 1975-373.  The reconstruction of a taxpayer's income need only be reasonable in light of all surrounding facts and circumstances.  Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

To reconstruct petitioners' gross income, respondent utilized the bank deposits method.  The bank deposits method of income reconstruction has long been sanctioned by the courts. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Bolton v. Commissioner, supra.

Bank deposits constitute prima facie evidence of income.[19] Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  This method of determining a taxpayer's income assumes that all the money deposited into a taxpayer's bank accounts during a specific period constitutes taxable income.  Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).  Of course, "the Government must

---

[19]"If the taxpayer feels that the Government's method of computation is unfair or inaccurate, the burden is on him to show such unfairness or inaccuracy."  DiLeo v. Commissioner, 96 T.C. 858, 871 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

take into account any non-taxable source or deductible expense of which it has knowledge." Id. Furthermore, "The fact that the Commissioner was not completely correct does not invalidate the method employed." DiLeo v. Commissioner, supra at 868.

Respondent determined an increase in petitioners' taxable income by analyzing funds deposited into two bank accounts. First, respondent analyzed deposits made in 1997 into Mr. Sowards' law firm "operating" bank account. Secondly, respondent analyzed the deposits made into the WPA bank account for all the years at issue.

### (a) Unreported Income - Law Firm Account

On their 1997 Federal tax return, petitioners reported gross receipts of $23,575 from Mr. Sowards's law practice. On the basis of deposits made into Mr. Sowards's law firm operating bank account, respondent determined that petitioners had additional income from this business of $7,725.

At trial, Revenue Agent Anoush Mahallati (Agent Mahallati) explained that in reconstructing petitioners' income, she took into account all obvious and known nontaxable items. See Price v. United States, supra at 671. On brief,[20] Mr. Sowards argues that respondent failed to account for several nontaxable items. Respondent counters and explains that, as his calculation demonstrates, all but one of the contested items were treated as

---

[20]Petitioners failed to question Agent Mahallati.

nontaxable.  The only contested deposit that respondent did not
deduct as a nontaxable item was a $3,000 payment from Mr.
Sowards's "client trust" bank account to his wife.[21]  The check
to Ms. Sowards states "paralegal service" on the memo line.

Given the fact that this check is from another account
related to Mr. Sowards's law practice ostensibly payable to his
wife for paralegal services and Mr. Sowards admitted that he
falsely reported his income on a Schedule C for a fabricated
organizational consulting business in his wife's name, it can be
inferred that this check represents legal fees earned by Mr.
Sowards which were diverted to his wife.  On the basis of the
entire record, including Mr. Sowards's consistent failure to
report income from STL (see infra), we find there is clear and
convincing evidence that petitioners had additional taxable
income of $7,275 in 1997.[22]

---

[21]Apparently, in addition to a law firm "operating" bank
account, which was the subject of the 1997 bank deposits
analysis, Mr. Sowards maintained a "client trust" bank account.
Check no. 142 made payable to petitioner "Marilyn Sowards" dated
Dec. 13, 1997, for $3,000, was drawn against an account at U.S.
Bank, account No. 9280006496, which was held in the name of "Ray
Sowards Atty. Attorney Client Trust Account".

[22]The amount respondent determined in the notice of
deficiency as additional, unreported income is $7,725.  However,
on brief, respondent lists the amount as $7,275.  It appears that
the amount stated in the notice of deficiency suffers from a
scrivener's error.  The total amount deposited into this bank
account in 1997 was $43,557.37.  Respondent identified and
subtracted nontaxable items of $12,707.  The difference results
in net taxable deposits of $30,850.37.  Petitioners reported

(continued...)

(b) <u>STL Checks to WPA</u>

In 1995, 1996, and 1997, STL issued checks to WPA in the total amounts of $65,833,[23] $128,000, and $50,345, respectively which were deposited into the WPA account.  The pattern of STL's periodic payments (weekly), the amounts of the payments, the frequent statements Mr. Sowards provided to STL for "amounts due," and the fact that Mr. Sowards rendered services to STL and its customers throughout the period of time that STL was making payments to WPA, establish that Mr. Sowards received remuneration for services he rendered to STL, its customers, and/or Mr. Strong.  That remuneration was in the form of the STL checks to WPA which were deposited into the WPA account.

Mr. Sowards contends that all the checks STL wrote to WPA were nontaxable loans.  In support, Mr. Sowards introduced a one-page document.  Because this document is the fulcrum of Mr. Sowards's position, we quote it in its entirety:

> This memorializes our oral agreement of January 3, 1995:
>
> This agreement between us is never to [sic] revealed to Jan Strong or Marilyn Sowards.
>
> Robert Strong Trustee, acting with full authorized authority on behalf of System Two, will loan Ray Sowards, from System Two, beginning January 1, 1995 to December 31, 2001, the sum to which we mutually agreed,

---

[22](...continued)
gross receipts of $23,575.  The difference then is $7,<u>275</u>.37.

[23]See <u>supra</u> note 18.

not to exceed Ten Thousand ($10,000.00) Dollars per month.  The loans will be advanced weekly, and Ray Sowards agrees to provide System Two proof of receipt on a weekly basis in the form of a statement or invoice for the weekly loaned amount.  The Checks will be payable to Wealth Preservation Assistance.

Interest shall accrue at the rate of Ten percent per annum.  Robert Strong will reconcile the account balance at the end of each year with Ray Sowards.

Robert Strong agrees that any and all liabilities, tax or otherwise, that arise from this memorialized transaction, will be born by System Two, Ltd. and/or Robert Strong personally.

The Loans and accrued interest shall be repaid according to the following terms and conditions:

1.  Upon the retirement of Robert Strong on December 31, 2001, Ray Sowards will take over the management of System Two, Ltd., and ownership of System Two's Financial Services business, and repay the loans at the rate of Ten Thousand Dollars ($10,000.00) per month, plus the accrued interest thereon, until the funds are depleted, limited to no more than twenty Per Cent (20%) of the gross proceeds generated by the Financial Services Business.  In the event of the demise of Robert Strong after these payments begin, the balance will be transferred to a trust to be created by Ray Sowards, the terms and conditions of which are private between Robert Strong and Ray Sowards, and not to be disclosed.  The Payments to Robert Strong will commence January 1, 2002.

2.  Upon the Demise of Robert Strong prior to January 1, 2002, the Account balance, at the time of demise, will be transferred to a trust to be created by Ray Sowards, the terms and conditions of which are private between Robert Strong and Ray Sowards, and not to be disclosed.  Payments to the created trust will be on the same basis as paragraph 1, above, beginning January 1, 2002.

3.  Upon the demise of the Financial services Business of System Two, Ltd., or System Two, or loss of control of the business by Robert Strong, prior to January 1, 2001, the Account balance, at the time of demise, will

be transferred to a trust to be created by Ray Sowards, the terms and conditions of which are private between Robert Strong and Ray Sowards, and not to be disclosed. Payments to the created trust will be on the same basis as paragraph 1, above, beginning January 1, 2002.

An American Express Card will be furnished to Ray Sowards, and all legitimate expenses will by [sic] Systems Two/Robert Strong for Travel Expenses.

This agreement may be modified by the two parties only in writing.

Dated: January 6, 1996[24]

There are what appear to be signatures at the bottom of the document.[25]

In challenging respondent's imputation of additional taxable income, Mr. Sowards argues that all the moneys received from STL were loans and, thus, nontaxable.

The characterization of advances as loans must be distilled from all the evidence. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980). "Loans are identified by the mutual understanding between the borrower and lender of the obligation to repay and a bona fide intent on the borrower's part to repay the acquired funds." Collins v. Commissioner, 3 F.3d 625, 631 (2d Cir. 1993) (emphasis in original omitted), affg. T.C. Memo. 1992-478. The ultimate question is whether there was a "genuine

---

[24]We note that this date is after the 1995 payments from STL.

[25]Only Mr. Sowards testified that the document bore his and Mr. Strong's signatures.

intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship". <u>Litton Bus. Sys., Inc. v. Commissioner</u>, 61 T.C. 367, 377 (1973).

In support of his "loan" argument, Mr. Sowards relies only upon the one-page document and his testimony. Of course, "It is well settled that we are not required to accept petitioner's self-serving testimony in the absence of corroborating evidence."[26] <u>Jacoby v. Commissioner</u>, T.C. Memo. 1994-612; see <u>Geiger v. Commissioner</u>, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 212 (1992). The mere declaration of intent does not establish, without additional substantiating evidence, the existence of a bona fide debt. <u>Turner v. Commissioner</u>, 812 F.2d 650, 654 (11th Cir. 1987), affg. T.C. Memo. 1985-159; <u>Cordes v. Commissioner</u>, T.C. Memo. 1994-377.

The document, which is at best ambiguous, states that certain of its terms and conditions are to remain secret. In the event of Mr. Strong's death, Mr. Sowards is to create a trust to which will be transferred the "Account balance" of the principal and accrued interest under "the terms and conditions of which are private between Robert Strong and Ray Sowards, and not to be

---

[26]Mr. Sowards testified that he did not know the exact amount that he allegedly borrowed from STL/Mr. Strong.

disclosed."[27]  At trial, Mr. Sowards failed to state the terms and conditions of the alleged trust he was to create.  The books and records of STL were not presented to the Court to assist in determining how STL characterized these payments.[28]  There was no collateral for these purported loans.  Mr. Sowards indicated that he had no present means of paying back the amounts purportedly borrowed.

The sole testimony of Mr. Sowards is not sufficient to establish the existence of an actual indebtedness.  On this record, we are convinced that the funds transferred from STL/Mr. Strong to petitioners/WPA were not loan proceeds.  Indeed, the evidence clearly establishes that the payments from STL to WPA were taxable income to Mr. Sowards.

### (c)  Other Deposits into WPA's Bank Account

In 1996 and 1997, funds were deposited into the WPA bank account in addition to STL moneys.  In 1996, an additional $21,773.86 was deposited into the WPA bank account.[29]  Examples of the additional items are:  (1) A check from Alan D. Telebaum

---

[27]Accrued interest was not due until the principal was due.

[28]Clearly, such information would be helpful since the intent of the parties is "perhaps the ultimate question."  Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 495 (1980).

[29]In fact, a total of $152,317.86 was deposited into the WPA bank account.  Of that, $2,544 represents nontaxable deposit items since Mr. Sowards transferred those sums from a different account.

dated February 20, 1996, for $450, on which the memo line states "Attorneys fees"; (2) a check from Nhu-Hanh Duong dated June 13, 1996, for $446.54, on which the memo line states "Deposition for Kevin Holt and pictures;" and (3) a check from Edward R. Gallegos dated October 1, 1996, for $1,000, on which the memo line states "partial retainer tax audit".

In 1997, an additional $8,277 was deposited into the WPA bank account.[30] The additional deposits included those items as: (1) Check No. 2011 from Preferred Capital for $50 dated February 7, 1997, on which the memo line states "Attorney advice"; and (2) check No. 902 from Advanced Strategies for $2,400 dated May 27, 1997, on which the memo line states "Trust Preparation". Mr. Sowards provided no evidence whatsoever regarding these additional deposits.

The record clearly establishes that Mr. Sowards regularly rendered services to STL, billing it via weekly statements, for which he regularly received remuneration. The amounts STL paid to WPA, which were deposited into WPA's account, constitute taxable income to petitioners. Thus, we hold that additional income shall be imputed to petitioners for 1995, 1996, and 1997, in the respective amounts $58,057, $128,000, and $50,345. Additionally, we are convinced that the amounts deposited in

---

[30]In fact, in 1997 $74,121.55 was deposited into the WPA account of which $15,500 is nontaxable items.

excess of the STL transfers to WPA's bank account in 1996 and 1997 in the respective amounts of $21,774 and $8,277 also constitute additional, unreported taxable income to petitioners.

We also disagree with petitioners' claim that WPA was a valid trust. Even if a trust were legally created under State law, we are not required to respect it as a separate entity for Federal tax purposes. Markosian v. Commissioner, 73 T.C. 1235, 1245 (1980). Whether a trust is a sham entity lacking in economic substance is a question of fact. United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 454 (1950); Paulson v. Commissioner, 992 F.2d 789, 790 (8th Cir. 1993), affg. T.C. Memo. 1991-508. The record clearly demonstrates that WPA engaged in no business or charitable activities during the relevant period. Mr. Sowards generally used WPA only as a receptacle into which he deposited income received from STL and out of which moneys flowed for his personal use.

In deciding whether a purported trust lacks economic substance, we consider the following factors: (1) Whether the taxpayer's relationship, as grantor, to property purportedly transferred into trust differed materially before and after the trust's formation; (2) whether the trust had a bona fide independent trustee; (3) whether an economic interest in the trust passed to trust beneficiaries other than the grantor; and (4) whether the taxpayer honored restrictions imposed by the

trust or by the law of trusts.  See <u>Markosian v. Commissioner</u>, <u>supra</u> at 1243-1245.

Here, Mr. Sowards's relationship to the property purportedly transferred to the trust was not changed by virtue of the creation of WPA.  The record demonstrates that despite being named the sole trustee of WPA, Ms. Morris had no further involvement with WPA after its creation.  Mr. Sowards had sole control over WPA's bank account.  The only "operations" in which WPA engaged were the receipt and payment of moneys.  No economic interest was transferred to WPA's beneficiaries.  Indeed, the purported beneficiaries had no knowledge of their interest in WPA.  Furthermore, Mr. Sowards admitted at trial that WPA "was never used as a trust."  We find that WPA was simply a paper entity wholly without economic substance.  See <u>Paulson v. Commissioner</u>, <u>supra</u>; <u>Chase v. Commissioner</u>, 926 F.2d 737 (8th Cir. 1991), affg. T.C. Memo. 1990-164.

C.  <u>Schedules C - Deductions for Expenses</u>

In the notice of deficiency, respondent disallowed all petitioners' Schedules C expense deductions for want of adequate substantiation.[31]  Mr. Sowards testified that he in fact incurred the expenses listed on the 1996 Schedule C for his wife's

---

[31]Respondent disallowed deductions from the Schedules C for 1996 and 1997 for Mr. Sowards's law practice.  Additionally, respondent disallowed deductions from the 1996 Schedule C for his wife's purported organizational consulting business.

purported organizational consulting business.  He claims that these expenses should have been reported on the 1996 Schedule C for his law practice.

Generally, ordinary and necessary expenses paid or incurred in the carrying on of a trade or business are deductible.  Sec. 162(a); sec. 1.162-1(a), Income Tax Regs.  "The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact."  Shea v. Commissioner, 112 T.C. 183, 186 (1999).

All deductible expenses are subject to substantiation. Secs. 6001, 274(d).  The general substantiation requirement is set forth in section 6001 and states in pertinent part: "Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records * * * and comply with such rules and regulations as the Secretary may from time to time prescribe."  The regulations provide that "any person subject to tax * * * shall keep such permanent books of account or records * * * as are sufficient to establish the amount of * * * deductions".  Sec. 1.6001-1(a), Income Tax Regs.  In the event that a taxpayer establishes that a deductible expense has been paid, but he is unable to substantiate the precise amount, the Court may estimate the amount of the deduction bearing heavily against the taxpayer.  Cohan v. Commissioner, 39 F.2d 540, 543- 544 (2d Cir. 1930).  However, the Court cannot make such an

estimate unless the taxpayer presents sufficient evidence to provide a reasonable basis upon which the estimate is made.[32] Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Mr. Sowards testified that he and Ms. Cheryl Nunn (Ms. Nunn), a financial planner, were working together on a few cases. He testified that one day, Ms. Nunn came to his office and mistakenly took two bankers boxes of documents from a chair. According to Mr. Sowards's testimony, Ms. Nunn took the boxes to her cabin in the Santa Cruz mountains where they were destroyed by a fire. Mr. Sowards testified that among those items destroyed were the documents which substantiate the expenses claimed on the returns and also documents concerning the alleged loan between Mr. Strong and Mr. Sowards. For support, Mr. Sowards introduced a fire department's report that the fire occurred.

The record before us is conspicuously devoid of any credible evidence or testimony substantiating the alleged deductions claimed. Petitioners presented no evidence (not even Mr. Sowards's testimony) substantiating any item of deduction. There was no testimony as to what car and truck expenses were incurred,

---

[32]The Court's ability to estimate reasonably the amount of a deduction is curtailed in the case of certain classes of expenses. Sec. 274(d) limits the Court's estimating ability. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); see Golden v. Commissioner, T.C. Memo. 1993-602.

what business property was leased or rented, or what items were being depreciated.  Mr. Sowards did not call Ms. Nunn, the alleged bailee of petitioners' financial records, as a witness in this matter.  Furthermore, we disagree with Mr. Sowards's contention that "no disallowed deduction is subject to the substantiation requirements of section 274(d)".  In fact, in 1995 and 1996, petitioners claimed depreciation deductions for computer equipment.  Computer equipment is a "listed property" under section 280F(d)(4).  Here, however, Mr. Sowards does not present a scintilla of evidence that the claimed expenses were in fact incurred.  On this record, we sustain respondent's disallowance of all deductions claimed as stated in the notices of deficiency.

D.  Fraud Penalties

Respondent determined fraud penalties for the taxable years 1996 and 1997.  Respondent applied the fraud penalties to the unreported income deposited into the WPA account and the unreported income deposited into Mr. Sowards's law practice account.  The Commissioner bears the burden of proving by clear and convincing evidence that an "underpayment exists for the years in issue and that some portion of the underpayment is due to fraud."  Sec. 7454(a); Rule 142(b); Niedringhaus v. Commissioner, 99 T.C. at 210; Temple v. Commissioner, T.C. Memo. 2000-337, affd. 62 Fed. Appx. 605 (6th Cir. 2003).

1. Clear and Convincing Evidence of Underpayment

To prove an underpayment, the Commissioner must establish that the taxpayer received unreported income that resulted in a tax deficiency. United States v. Campbell, 351 F.2d 336, 338 (2d Cir. 1965); Elwert v. United States, 231 F.2d 928, 931 (9th Cir. 1956); United States v. Bender, 218 F.2d 869, 871-72 (7th Cir. 1955); Langworthy v. Commissioner, T.C. Memo. 1998-218.

When the allegations of fraud are based on reconstructed income, respondent can satisfy his burden of proving the underpayment in one of two ways:  (1) By proving a likely source of the unreported income; or (2) where the taxpayer alleges a nontaxable source, respondent may meet his burden by disproving the taxpayer's alleged nontaxable source. DiLeo v. Commissioner, 96 T.C. at 873-874.

Mr. Sowards alleged that the funds transferred by STL to WPA were loans and that the unreported law firm income was composed of nontaxable items. As we have previously found, respondent proved that the payments from STL were income, that there was no valid loan agreement between Mr. Sowards and Mr. Strong/STL, that WPA was a sham, and that there were no nontaxable items for which respondent did not account. Thus, respondent has met his burden of proving an underpayment by clear and convincing evidence.

## 2. Intent To Defraud

We now turn to whether Mr. Sowards's failure to report income was an effort to fraudulently evade his tax liability. "Fraud is the intentional wrongdoing on the part of a taxpayer to evade a tax believed to be owing." Temple v. Commissioner, supra; see DiLeo v. Commissioner, supra at 874; Profl. Servs. v. Commissioner, 79 T.C. 888, 930 (1982). "The required state of mind is one which, 'if translated into action, is well calculated to cheat or deceive the government.'" Zell v. Commissioner, 763 F.2d 1139, 1143 (10th Cir. 1985) (quoting 10 Mertens, Law of Federal Income Taxation, sec. 55.10, at 46 (1984)), affg. T.C. Memo. 1984-152. A taxpayer's background and the context of the events in question may be considered in determining fraudulent intent. Plunkett v. Commissioner, 465 F.2d 299 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Furthermore, a taxpayer's level of education is relevant to the inquiry. Temple v. Commissioner, supra.

Because it is difficult to prove fraudulent intent by direct evidence, fraud can be inferred from various kinds of circumstantial evidence. Courts describe these "badges of fraud" as including the following: (1) Understatement of income; (2) failing to maintain adequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations; (5) concealment of assets; (6) failure to cooperate with tax

- 33 -

authorities; (7) the filing of false documents; (8) making of false and inconsistent statements to revenue agents; (9) concealing income from a taxpayer's tax preparer; and (10) extensive dealings in cash. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Parks v. Commissioner, 94 T.C. 654, 664 (1990); Temple v. Commissioner, supra. No single factor is necessarily dispositive; however, a combination of several factors is persuasive circumstantial evidence of fraud. Petzoldt v. Commissioner, 92 T.C. at 699. "A pattern of consistent underreporting of income, particularly when accompanied by other circumstances exhibiting an intent to conceal, justifies an inference of fraud." Posnanski v. Commissioner, T.C. Memo. 2001-26; see Holland v. Commissioner, 348 U.S. 121, 137 (1954).

In this case, the record discloses multiple "badges of fraud" which clearly and convincingly justify the imposition of fraud penalties. In 1996 and 1997, there was a significant understatement of income. We find Mr. Sowards's testimony that the funds transferred by STL were loans was false. Except for Mr. Sowards's self-serving testimony and an alleged loan document, all the evidence refutes the existence of a debtor-creditor relationship. The pattern of STL's periodic payments (weekly), the amounts of the payments, the frequent statements Mr. Sowards provided to STL for "amounts due," and the fact that

- 34 -

Mr. Sowards rendered services to STL and its customers throughout the period of time that STL was making payments to WPA, establish that Mr. Sowards received remuneration for services he rendered to STL, its customers, and/or Mr. Strong. That remuneration was in the form of the STL checks to WPA which were deposited into the WPA account. We find that the understatement of this income to be clear and convincing evidence of fraudulent intent.

Mr. Sowards failed to maintain records of income. His allegation of their alleged destruction is not believable. Ms. Nunn did not testify that Mr. Sowards's financial documents were destroyed in a fire at her house. We find the absence of records, given the circumstances of this case, to be strong evidence of fraudulent intent.

Mr. Sowards concealed assets and income from petitioners' tax return preparer. Petitioners' return preparer for 1995 and 1997 testified that he was not aware of WPA or STL. Mr. Sowards failed to disclose the significant sums of money flowing from STL to WPA and the fact that all these sums were used for his personal needs. We find this failure to inform the return preparer, given the circumstances of this case, to be strong evidence of fraudulent intent.

Mr. Sowards failed to cooperate with tax authorities. He made numerous false and inconsistent statements to respondent's employees. When interviewed and questioned on September 30,

1998, Mr. Sowards failed to disclose the existence of the WPA bank account. In a February 23, 1999, telephone interview, Mr. Sowards stated that he knew very little about WPA. When respondent's employee indicated that he had information linking Mr. Sowards with STL, Mr. Sowards stated that WPA was set up for the retirement of Mr. Strong, and the funds transferred were loans.[33] Mr. Sowards indicated that there was no written contract between himself and Mr. Strong. However, at the August 10, 1999, interview with the Revenue Agent, Mr. Sowards produced for the first time the alleged loan document.

Mr. Sowards falsely represented that his wife had an organizational consulting business. He maintained this representation throughout this litigation until trial when he admitted that he had fabricated this business. See DiLeo v. Commissioner, 96 T.C. at 874 ("The taxpayer's entire course of conduct can be indicative of fraud.").

We find all the above to be clear and convincing evidence that Mr. Sowards fraudulently understated his tax for 1996 and 1997.[34]

---

[33]Mr. Sowards purported to have assigned beneficial interests in WPA to his wife and family, not to Mr. Strong.

[34]Since we sustain respondent's fraud penalties, respondent's alternative accuracy-related penalty pursuant to sec. 6662 is moot. On brief, Mr. Sowards conceded additions to tax under sec. 6654.

E.  <u>Negligence Penalties</u>

In the notices of deficiency, respondent determined accuracy-related penalties pursuant to section 6662 in the amounts of $19,738.00,[35] $1,150.80, and $774.60 for the taxable years 1995, 1996, and 1997, respectively.  The 1995 penalty is based upon petitioners' failure to report WPA income.  The 1996 and 1997 penalties are premised upon respondent's disallowance of expense deductions for Mr. Sowards's law practice and for the fabricated organizational consulting business.

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to, inter alia, negligence and/or a substantial understatement of income tax.  "Negligence" is defined as "any failure to make a reasonable attempt to comply with the provisions of this title" and "disregard" means "any careless, reckless, or intentional disregard."  Sec. 6662(c).  Similarly, case law defines negligence as a lack of due care or "the failure to do what a reasonable and ordinarily prudent person would do under the circumstances."  <u>Freytag v. Commissioner</u>, 89 T.C. 849, 887 (1987) (quoting <u>Marcello v.</u>

---

[35]It appears from the notice of deficiency that the amount of the negligence penalty that respondent calculated for 1995 is premised upon, inter alia, the inclusion of $209,141 of additional, unreported income.  As indicated previously, respondent conceded this issue.  See <u>supra</u> note 2.  Thus, in accordance with this opinion and the concession of the parties, the amount of the negligence penalty must necessarily be recalculated.

<u>Commissioner</u>, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Pursuant to the regulations, "'Neglience' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c) provides an exception to the penalty imposed under section 6662(a).  "No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Sec. 6664(c)(1).  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, contemplating all of the relevant facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Given the record before us, we sustain the negligence penalties.  Mr. Sowards was not a credible witness; he offered inconsistent and implausible explanations to respondent's employees and this Court.  He intentionally disregarded the tax laws by attempting to surreptitiously characterize payments by STL to WPA as nontaxable loans.  The failure to keep books and substantiate claimed deductions justifies the imposition of the penalties.  See sec. 1.6662-3(b)(1), Income Tax Regs.

Accordingly, on this record, we sustain respondent's imposition of negligence penalties.

F.  Relief From Joint and Several Liability

If a joint return is filed, the liability with respect to income tax is normally joint and several as between husband and wife.  Sec. 6013(d)(3).  Ms. Sowards argues that she is entitled to relief from such joint income tax liability.  Ms. Sowards is seeking relief under section 6015(b), (c), or (f), but her primary argument is that she should be relieved from all liability pursuant to section 6015(c).

Section 6015(c)

Section 6015(c) grants relief from joint and several tax liability for electing individuals who filed a joint return and are no longer married, are legally separated, or are living apart.  Congress intended that such relief from liability be available for tax attributable to items of which the electing spouse had no knowledge.  S. Rept. 105-174, at 55 (1998), 1998-3 C.B. 537, 591.  Generally, this road to relief treats spouses, for purposes of determining tax liability, as if separate returns had been filed.  Sec. 6015(d)(3)(A); Grossman v. Commissioner, 182 F.3d 275, 278 (4th Cir. 1999), affg. T.C. Memo. 1996-452; Charlton v. Commissioner, 114 T.C. 333, 342 (2000); Rowe v. Commissioner, T.C. Memo. 2001-325.  The allocation, however, is not permitted if the Secretary shows by a preponderance of the

evidence that the electing individual had "actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual".  Sec. 6015(c)(3)(C); Culver v. Commissioner, 116 T.C. 189, 195 (2001); Cheshire v. Commissioner, 115 T.C. 183 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

Here, respondent does not contest that petitioners were not members of the same household during the 12-month period before electing relief and that the omitted income and disallowed deductions are allocable to Mr. Sowards to the extent that Ms. Sowards did not have actual knowledge.  Our inquiry then focuses on whether respondent has shown that Ms. Sowards had actual knowledge, at the time she signed the joint returns, of "any item giving rise to a deficiency (or portion thereof)".[36]  Sec. 6015(c)(3)(C).

(a) Omitted Income

Respondent argues that Ms. Sowards had actual knowledge of the omitted income since she received WPA checks from her husband and knew that her husband made payments out of the WPA bank account for personal expenses, like tuition, mortgage payments, etc.  We articulated the "actual knowledge" standard in omitted

_____

[36]Sec. 6015(c)(3)(C) places the burden of proof on respondent with regard to whether the electing spouse had actual knowledge of the items in question.  Culver v. Commissioner, 116 T.C. 189, 195 (2001).

income cases as "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)." Cheshire v. Commissioner, supra at 195.

No evidence was presented that Ms. Sowards had actual knowledge of the amounts that STL paid to WPA or that her husband failed to report those items. Ms. Sowards testified that her husband told her and she believed that the WPA bank account was his law firm's account, that her husband never discussed the family's finances, and that she did not even know of the existence of her purported beneficial interest in WPA. We find her testimony credible and persuasive.

In Culver v. Commissioner, supra, we held that the taxpayer was entitled to relief because the Commissioner failed to prove that the electing taxpayer had actual knowledge of the funds embezzled by his wife. The Court found that despite the fact that the embezzled funds were deposited into the couple's joint bank account and family expenses were paid therefrom, the Commissioner had failed to demonstrate that the electing spouse had actual knowledge of the embezzled funds. The Court emphasized that the standard under section 6015(c) "is not that of a hypothetical, reasonable person, but only that of * * * [the electing spouse's] actual subjective knowledge." Id. at 197.

In Rowe v. Commissioner, supra, we found that the electing taxpayer did not have actual knowledge of omitted income distributed from an IRA opened in her name. The Commissioner attempted to establish the requisite knowledge by citing the fact that the IRA statements were mailed to the taxpayer's home address and bore the electing spouse's name. Finding the electing taxpayer credible, we determined that the Commissioner failed to prove that she had an actual awareness of the omitted income.

On the basis of the record, we hold that respondent failed to prove that Ms. Sowards had an actual and clear awareness of the omitted income. Ms. Sowards credibly testified that she did not know of the nature and amounts of the payments made by STL to WPA, which was confirmed by Mr. Sowards's testimony. Accordingly, we hold that petitioner is entitled to relief from liability under section 6015(c) for the omitted income.

(b) Erroneous Deductions

In King v. Commissioner, 116 T.C. 198, 204 (2001), we held that "the proper application of the actual knowledge standard in section 6015(c)(3)(C), in the context of a disallowed deduction, requires respondent to prove that petitioner had actual knowledge of the factual circumstances which made the item unallowable as a deduction." In that case, the Commissioner disallowed a deduction because the electing taxpayer's former spouse lacked

the necessary profit motive.  Id. at 203.  We narrowed the question to whether the electing spouse knew or believed that her former husband was not engaged in the activity for the primary purpose of making a profit.  Id. at 205.  We found that the Commissioner failed to carry his burden.  A similar result is appropriate on this record.

Here, Ms. Sowards had no involvement in her husband's law practice.  All the records, bills, correspondence, bank statements, etc., were delivered to the law firm's address.  Mr. Sowards did not discuss his business affairs with her.  Furthermore, as the record demonstrates, Ms. Sowards knew nothing of the organizational consulting business fabricated by her husband.  Respondent presented no evidence which would convince us that Ms. Sowards's testimony should be questioned.  Accordingly, respondent has failed to prove that Ms. Sowards had actual knowledge of the factual circumstances which made the items "unallowable as deductions".

G.  Conclusion

On this record, we hold that Mr. Sowards omitted significant income from petitioners' 1995, 1996, and 1997 returns and that the resulting underpayments for 1996 and 1997, as determined in the notice of deficiency, were due to fraud.  We also hold that petitioners are not entitled to deductions that respondent disallowed and that the negligence penalties determined by

respondent are correct.  Finally, we hold that Ms. Sowards is entitled to relief from liability pursuant to section 6015(c) for the deficiencies and penalties in issue.

<u>Decisions will be entered under Rule 155</u>.