T.C. Memo. 2009-201

UNITED STATES TAX COURT

THURMAN L. PHEMISTER AND DENISE M. ROSS, f.k.a. DENISE M. AIELLO
PHEMISTER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21419-06.                    Filed September 9, 2009.

Denise M. Ross, pro se.

James A. Kutten and Timothy J. Driscoll, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge: Respondent determined the following deficiencies, additions to tax, and penalties with respect to petitioners' Federal income taxes:[1]

---

[1]Unless otherwise indicated, all section references are to
                                        (continued...)

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662(a) |
|------|-----------|--------------------------------|--------------------------------------|
| 1999 | $31,508 | $9,208 | $6,302 |
| 2000 | 37,642 | 10,500 | 7,528 |
| 2001 | 44,986 | 12,611 | 8,956 |
| 2002 | 43,360 | 6,216 | 8,672 |
| 2003 | 52,241 | 1,973 | 10,448 |
| 2004 | 38,706 | -0- | 7,741 |

After concessions,[2] the issues for decision are:

---

[1](...continued)
the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Respondent determined that petitioners are liable for an additional tax under sec. 72(t) for an early withdrawal from an individual retirement account (IRA). Petitioners did not contest the additional tax in their petition or at trial. Petitioners' liability for the additional tax under sec. 72(t) is deemed conceded in accordance with Rule 34(b)(4).

Respondent also determined that petitioners received unreported interest income and an unreported IRA distribution in 2001 and an unreported State income tax refund in 2004. Respondent determined that Dr. Phemister received unreported nonemployee compensation in 2003. Additionally, respondent disallowed a portion of petitioners' charitable contribution deductions for 1999, 2000, 2001, 2003, and 2004 and petitioners' special fuel tax credits for 2000 and 2001. In their petition, petitioners contested respondent's adjustments to their income, charitable contribution deductions, and special fuel tax credits. However, petitioners did not introduce any evidence at trial or present any argument on brief with respect to respondent's determinations. We therefore deem petitioners to have conceded the adjustments to their income, charitable contributions, and special fuel tax credits. See Rules 142(a), 149(b); Rothstein v. Commissioner, 90 T.C. 488, 497 (1988); Cerone v. Commissioner, 87 T.C. 1, 2 n.1 (1986). The only other adjustments that petitioners dispute concern their personal exemptions and self-employment tax, which we need not address because they are computational.

(1) Whether petitioners Thurman L. Phemister (Dr. Phemister) and Denise M. Ross (Ms. Ross) substantiated the deductions they claimed for 1999-2004 with respect to their horse activity and whether their horse activity constituted an activity not engaged in for profit within the meaning of section 183;

(2) whether petitioners substantiated deductions claimed for 1999-2004 on Schedules C, Profit or Loss From Business, with respect to Dr. Phemister's emergency room physician business (ER physician business);

(3) whether petitioners substantiated Schedule C interest expense and legal and professional services expense deductions claimed for 2003 and 2004 with respect to a retail business, End of the Trail (retail business);

(4) whether petitioners should have reported additional income with respect to the retail business for 2003 and 2004;

(5) whether petitioners are liable for an addition to tax under section 6651(a)(1) for each of the years 1999-2003;

(6) whether petitioners are liable for an accuracy-related penalty under section 6662(a) for each year in issue; and

(7) to the extent we find petitioners liable for any tax deficiencies, additions to tax, and/or penalties, whether Ms. Ross is entitled to relief under section 6015.

FINDINGS OF FACT

Ms. Ross and respondent have stipulated some of the facts, which we incorporate in our findings by this reference. Petitioners resided in Illinois when they petitioned this Court. Dr. Phemister did not participate in the trial because he had settled all of the issues with respondent before the trial.

Petitioners

Ms. Ross is a high school graduate. Although she took several college-level courses, including courses in music, foreign language, government, and marketing, she neither pursued nor received a college degree. At some point Ms. Ross worked as a medical assistant. In 1982 she married Dr. Phemister, with whom she had three children. Petitioners separated in approximately November 2005 and divorced in approximately August 2007.

For all relevant years, Dr. Phemister was a physician who worked in various hospital emergency rooms. He received wages and nonemployee compensation for his services as a physician. During the same period Ms. Ross was not employed and received no wages. She occupied her time by, among other things, volunteering at local clubs and buying, training, and selling horses.

Petitioners maintained a joint checking account into which Dr. Phemister deposited his earnings and from which Ms. Ross paid

household bills. Although Ms. Ross typically paid most of the household bills, Dr. Phemister occasionally paid some of them.

During the years at issue petitioners lived on property they owned in a rural area of southern Illinois. The property was improved by a residence, an in-ground swimming pool, and a barn.

ER Physician Business

Dr. Phemister contracted with several hospitals for him to perform services as an emergency room physician. He maintained an office on the lower level of petitioners' residence for his ER physician business. At some point during the 1980s Ms. Ross worked as a medical assistant in her husband's ER physician business, but she has had no substantive involvement with his business since then.[3]

Dr. Phemister hired an accountant to keep the books and records of his ER physician business and to prepare petitioners' income tax returns. Dr. Phemister was responsible for supplying information regarding his income and expenses to the accountant. Ms. Ross was not involved in recording the expenses for Dr. Phemister's ER physician business or in determining what deductions to claim regarding that business. Dr. Phemister paid most of the bills attributable to his ER physician business.

---

[3]Respondent contends that Ms. Ross paid some of the expenses of Dr. Phemister's ER physician business.

Horse Activity

In 1999 Ms. Ross began attending horse auctions and purchasing horses. Her experience with horses started when she was 16 years old and consisted of riding and training horses for pleasure. Ms. Ross became interested in purchasing, training, and selling horses (horse activity) through friends, and she viewed the horse activity as an activity she and her sons could do together. The horse activity also provided her with something to do while staying at home to be near one of her sons who had health problems.

Ms. Ross spent between 20 and 40 hours each week on the horse activity but did not maintain a regular schedule. Although Ms. Ross opened a separate checking account for the horse activity, she primarily used petitioners' personal checking account for the activity.

Before beginning the horse activity Ms. Ross did not have any experience operating a business. She did not prepare a business plan, and she did not consult with any experts on how to keep records or make her horse activity profitable.

Petitioners shared responsibility for maintaining the horse-activity records and making general purchases for the activity. Petitioners did not keep detailed records with respect to each horse. In fact, they maintained few records that were horse

specific.  In general, petitioners did not maintain accurate contemporaneous records for their horse activity.

In a year that does not appear in the record petitioners erected the barn on their property to stable their horses.  The barn contained a riding arena, a training area, several horse stalls, and an office.  When petitioners first began building the barn, they discovered that a covenant had been placed upon their property that prohibited stabling horses.  With the assistance of an attorney, they had the covenant removed and then constructed their barn.

When Ms. Ross first began purchasing horses, she based her purchasing decisions on advice she received from horse traders who accompanied her to auctions.[4]  Initially Ms. Ross purchased more expensive horses, but she discovered that they did not sell well in the area where petitioners lived.  She eventually began making bulk purchases at auctions of lower quality, inexpensive horses.  Some of the more expensive horses were insured, but most of petitioners' horses were not.  Occasionally, petitioners registered a horse in the name of one of their children.

Petitioners did not post any signs on their property advertising their horse activity.  In early 2005 petitioners discontinued their horse activity.

---

[4]Dr. Phemister also bought and sold horses.

End of the Trail

In approximately December 2003 Ms. Ross opened the retail business, which specialized in western wear.  Ms. Ross developed a business plan, and she kept books and records for the business. Dr. Phemister was not involved in the retail business' operations.  He did, however, help Ms. Ross obtain financing for the retail business by cosigning a loan.

Petitioners' Tax Reporting

Petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, for 1999-2004 on the following dates:[5]

| Year | Date filed |
|------|------------|
| 1999 | Apr. 16, 2003 |
| 2000 | Nov. 19, 2003 |
| 2001 | May  12, 2004 |
| 2002 | Aug. 24, 2004 |
| 2003 | Dec. 15, 2005 |
| 2004 | Jan. 30, 2006 |

On their returns petitioners reported wages from Dr. Phemister's employment as a physician and net income or loss from Dr. Phemister's ER physician business as follows:

| Year | Wages | ER physician business | Total |
|------|-------|-----------------------|-------|
| 1999 | $29,728 | $227,147 | $256,875 |
| 2000 | 34,583 | 239,005 | 273,588 |
| 2001 | 17,500 | 282,118 | 299,618 |
| 2002 | 271,582 | 58,945 | 330,527 |
| 2003 | 413,635 | (7,892) | 405,743 |
| 2004 | 405,877 | (1,700) | 404,177 |

---

[5]Petitioners generally provided their books and records to an accountant who prepared their returns.

Dr. Phemister reported income and expenses from his ER physician business for 1999-2004 on Schedules C attached to the returns.

Petitioners also attached to their 1999-2004 returns Schedules F, Profit or Loss From Farming, on which they reported the income, expenses, and net losses from their horse activity, and Schedules C, on which they reported the income, expenses, and net losses from the retail business. The net losses were as follows:

| Year | Horse activity | Retail business |
|------|---------------|-----------------|
| 1999 | ($33,224) | n/a[1] |
| 2000 | (59,571) | n/a |
| 2001 | (80,939) | n/a |
| 2002 | (116,733) | n/a |
| 2003 | (129,273) | ($11,099) |
| 2004 | (82,369) | (27,396) |

[1]The retail business did not begin operations until 2003.

In approximately March 2004 respondent began to audit petitioners' returns. On July 24, 2006, respondent issued a notice of deficiency for 1999-2004 that (1) disallowed all of the deductions claimed with respect to Dr. Phemister's ER physician

business[6] for 1999-2004; (2) disallowed the net losses claimed with respect to petitioners' horse activity for 1999-2004; (3) disallowed some or all of the legal and professional services expense deductions and the interest expense deductions claimed with respect to the retail business for 2003-2004; and (4) determined that the retail business Schedules C for 2003 and 2004 underreported gross receipts by $3,630 and $23,654, respectively.[7]  In the notice of deficiency respondent also determined that petitioners were liable for section 6651(a)(1) additions to tax and section 6662 accuracy-related penalties.

Petitioners timely petitioned this Court.  Shortly before trial Ms. Ross asserted for the first time that she is entitled to relief from any deficiencies for 1999-2004 under section 6015(b), (c), or (f).  We treated the claim as timely raised and

_____

[6]Respondent disallowed the following expenses for the ER physician business:

| Year | ER physician business expenses |
|------|-------------------------------|
| 1999 | $36,646 |
| 2000 | 29,007 |
| 2001 | 31,679 |
| 2002 | 31,481 |
| 2003 | 31,928 |
| 2004 | 41,074 |

[7]The notice of deficiency also adjusted other items on petitioners' 1999-2004 returns, but petitioners have conceded or are deemed to have conceded those adjustments.

as a proper issue for decision.  A trial was held at which Ms.

Ross appeared but Dr. Phemister did not.[8]

OPINION

I.  Respondent's Determinations

The Commissioner's determinations in the notice of

deficiency are presumed correct, and a taxpayer bears the burden

of proving error in the Commissioner's determinations.[9]  Rule

142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Pfluger v.

Commissioner, 840 F.2d 1379, 1382 (7th Cir. 1988), affg. T.C.

Memo. 1986-78.

A.  Schedule C Deductions

Respondent argues that petitioners are not entitled to

deduct the expenses claimed on the Schedules C for Dr.

Phemister's ER physician business and the legal and professional

service and interest expenses for the retail business because

petitioners did not substantiate the expenses and because some of

the expenses were nondeductible personal expenditures.

---

[8]At trial respondent confirmed that Dr. Phemister had settled all issues with respondent.  However, neither respondent nor Dr. Phemister submitted any documentation of the settlement to the Court before or during trial.  At trial we determined that Ms. Ross had not agreed to any settlement and that trial would proceed with respect to Ms. Ross.  Dr. Phemister, who did not appear at trial, remains a party to this proceeding.

[9]Ms. Ross does not argue that the burden of proof with respect to respondent's determinations shifts to respondent under sec. 7491(a), and Ms. Ross did not introduce any evidence that petitioners satisfied the requirements of sec. 7491(a)(2).

Deductions are strictly a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Pfluger v. Commissioner, supra at 1386. The taxpayer must maintain records sufficient to establish any deduction claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) authorizes a deduction for business expenses if a taxpayer proves that the expenses (1) were paid or incurred during the taxable year, (2) were incurred to carry on the taxpayer's trade or business, and (3) were ordinary and necessary expenditures of the business. See Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971). An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Personal, living, or family expenses, on the other hand, generally are not deductible. See sec. 262(a).

1. ER Physician Business

The only evidence introduced at trial regarding the disallowed deductions Dr. Phemister claimed with respect to his ER physician business was Ms. Ross' testimony. Ms. Ross

testified that she had reviewed the deductions and she thought they appeared correct. Ms. Ross' testimony was general, vague, unpersuasive, and uncorroborated by documentation showing the dates, amounts, and business purpose of the expenses claimed. Ms. Ross' testimony was completely inadequate to substantiate the disallowed deductions as required by sections 162 and 6001. See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Shea v. Commissioner, 112 T.C. 183, 189 (1999).

Because Ms. Ross failed to substantiate the disallowed deductions or to prove that respondent's determinations were otherwise in error, we sustain respondent's determinations.

### 2. Retail Business

Ms. Ross also failed to introduce credible evidence to substantiate the disallowed deductions claimed for her retail business. Although she testified that she kept records for the retail business, she did not produce any documents to substantiate the disallowed deductions. We sustain respondent's determination.

### B. Unreported Income

Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source

derived".  Respondent argues that the gross receipts generated by the retail business during 2003 and 2004 were underreported.

1. Burden of Production

When a case involves unreported income and that case is appealable to the Court of Appeals for the Seventh Circuit, as this case is absent a stipulation to the contrary, see sec. 7482(b)(2), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity, see Pittman v. Commissioner, 100 F.3d 1308, 1317 (7th Cir. 1996), affg. T.C. Memo. 1995-243; Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559; see also Golsen v. Commissioner, 54 T.C. 742, 756 (1970) (Tax Court is bound to apply the law of the circuit in which the case is appealable), affd. 445 F.2d 985 (10th Cir. 1971).  Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer to rebut the presumption by establishing that the Commissioner's determination is arbitrary or erroneous.  See Gold Emporium, Inc. v. Commissioner, supra at 1378; see also United States v. Janis, 428 U.S. 433, 441-442 (1976).[10]

---

[10]The Court of Appeals for the Seventh Circuit has indicated that it is difficult for taxpayers to overcome the presumption of
(continued...)

To satisfy his initial burden of production, respondent introduced evidence linking Ms. Ross to the retail business. Ms. Ross testified, and petitioners' Schedules C reflect, that she was the proprietor of the business. Further, respondent introduced evidence that petitioners had cash receipts that were not from horse sales. Many of the sales were for small items, such as western wear and accessories, and some of the receipts were deposited into the retail business' checking account. Respondent also introduced evidence that some of the retail business' sales were incorrectly reported on petitioners' 2003 and 2004 Schedules F as income from the horse activity. On this record we conclude that respondent has laid the requisite foundation for the unreported income adjustments and that respondent's unreported income adjustments are entitled to the presumption of correctness.

### 2. Burden of Proof

The taxpayer ordinarily has the burden of proving by a preponderance of the evidence that the Commissioner's adjustments are erroneous or arbitrary. See Pittman v. Commissioner, supra at 1314; Lundgren v. Commissioner, T.C. Memo. 2006-177. Although

---

[10](...continued)
correctness surrounding the notice of deficiency where they have failed to supply adequate books and records from which their income can be ascertained. Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1379 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559.

Ms. Ross had the burden of proof on this issue, she failed to carry it.  We sustain respondent's unreported income adjustments.

C.  Horse-Activity Losses

Respondent asserts that petitioners are not entitled to deduct the losses for their horse activity.  According to respondent, petitioners were not engaged in a trade or business and they did not adequately substantiate their claimed Schedule F deductions.

Taxpayers generally have the burden of proving that they were engaged in a trade or business and that they are entitled to the deductions claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. at 115. Taxpayers must maintain adequate records to substantiate their claimed deductions.  Sec. 6001; Pfluger v. Commissioner, 840 F.2d at 1386.  If a taxpayer fails to show error in the Commissioner's determination that the taxpayer was not engaged in an activity for profit, then section 183 limits the taxpayer's deductions for expenses attributable to the activity, as provided in section 183(b).

The Court of Appeals for the Seventh Circuit has applied the dominant or primary objective standard to test whether an alleged business activity is conducted for profit.  Nickerson v. Commissioner, 700 F.2d 402, 404 (7th Cir. 1983), revg. T.C. Memo.

1981-321; see <u>Peat Oil & Gas Associates v. Commissioner</u>, 100 T.C. 271, 291 n.11 (1993) (Ruwe, J., concurring), affd. sub nom. <u>Ferguson v. Commissioner</u>, 29 F.3d 98 (2d Cir. 1994); see also <u>Commissioner v. Groetzinger</u>, 480 U.S. 23, 35 (1987).  Under that standard a taxpayer must prove that he or she conducted an activity with the dominant or primary objective of making a profit in order to claim deductions under section 162 and a resulting net loss if expenses exceed the activity's gross receipts.

In order to establish that they engaged in the horse activity for profit, petitioners were required to show they entertained an actual and honest profit objective, even if that objective was unreasonable or unrealistic.  <u>Burger v. Commissioner</u>, 809 F.2d 355, 358 (7th Cir. 1987), affg. T.C. Memo. 1985-523; <u>Surloff v. Commissioner</u>, 81 T.C. 210, 233 (1983); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.  In determining whether the requisite intent to make a profit exists, greater weight is given to the objective facts than to the taxpayer's self-serving characterization of his intent.  <u>Dreicer v. Commissioner</u>, <u>supra</u> at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in determining

whether the taxpayer has the requisite profit objective.  The factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  No single factor is determinative, and not all factors are applicable in every case. Burger v. Commissioner, supra at 358 n.4; Allen v. Commissioner, 72 T.C. 28, 34 (1979).  We review each of the factors below.

### 1. Manner of Conducting the Activity

The first factor considers the manner in which petitioners conducted their horse activity.  In analyzing this factor we examine:  Whether a taxpayer maintained complete and accurate books and records; whether the taxpayer conducted the activity in a manner substantially similar to other profitable activities of the same nature; and whether the taxpayer made changes in operating methods, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to

improve profitability.  See Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

The maintenance of complete and accurate books and records is an indication that a taxpayer may have engaged in an activity for profit.  Sec. 1.183-2(b)(1), Income Tax Regs.  Ms. Ross conceded that petitioners did not keep regular records of the income and expenses for their horse activity.  Ms. Ross also admitted they did not have a business plan for their horse activity.

Changing operating methods to improve profitability may indicate an intent to make a profit.  Although Ms. Ross testified that petitioners decided to purchase inexpensive horses after discovering that more expensive horses did not sell well in their area, the record does not establish that the change had a material impact on the horse activity's profitability.  See Golanty v. Commissioner, 72 T.C. 411, 428 (1979) (changes must be sufficient to alter materially the prospects of making a profit), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Losses from the horse activity did not decline after petitioners changed their approach to buying horses.  In fact, petitioners' largest losses were generated during 2002 and 2003 when petitioners allegedly purchased and sold inexpensive horses.

Finally, we note that Ms. Ross presented no evidence of petitioners' marketing and sales efforts, including whether these

efforts, if any, changed after the inception of the activity. Relatively little was spent on advertising. Cf. Burrow v. Commissioner, T.C. Memo. 1990-621 (finding horse-breeding activity had profit objective where taxpayers publicized business and advertised extensively). Despite substantial losses and few sales, petitioners did not increase their advertising efforts to improve sales revenue.

We conclude that during the years at issue petitioners did not conduct their horse activity in a businesslike manner. This factor favors respondent's position.

### 2. Expertise of Taxpayers and/or Their Advisers

The second factor considers the expertise of the taxpayers or their advisers with respect to the activity. Preparation for an activity by extensive study of its accepted business, economic, and scientific practices or consultation with industry experts may indicate a profit motive where the taxpayer carries on the activity in accordance with such practices. See sec. 1.183-2(b)(2), Income Tax Regs. Taxpayers must either possess expertise in an activity or "familiarize themselves with the undertaking" and "consult or employ an expert" on how to operate profitably. Burger v. Commissioner, 809 F.2d at 359.

Ms. Ross presented no evidence that petitioners had personal expertise in operating a profitable horse breeding and trading activity. Ms. Ross' experience with horses was limited to

riding, and she gained knowledge of the trading business by accompanying traders to horse shows. Ms. Ross admitted petitioners neither consulted experts for advice on operating their horse activity profitably nor developed any personal expertise as to how to make their activity profitable. This factor favors respondent's position.

### 3. Taxpayer Time and Effort

The third factor considers the time and effort a taxpayer commits to an activity. The fact that a taxpayer devotes personal time and effort to carry on an activity may indicate an intent to derive a profit, particularly where there are no substantial personal or recreational elements associated with the activity. See Daley v. Commissioner, T.C. Memo. 1996-259; sec. 1.183-2(b)(3), Income Tax Regs. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may be evidence that the activity was engaged in for profit. See sec. 1.183-2(b)(3), Income Tax Regs.

Dr. Phemister was employed as a physician and maintained a business as a physician during all relevant years. There is no evidence in the record that he devoted any significant time to the horse activity.[11] The record reveals that Ms. Ross was not employed when petitioners began the horse activity. She

---

[11]The record reveals only that Dr. Phemister purchased and sold horses.

committed anywhere from 20 to 40 hours each week to the activity, but she also derived personal pleasure from the activity.  This factor is neutral.

### 4. Potential for Asset Appreciation

The fourth factor examines a taxpayer's expectation that the assets used in an activity will appreciate in value.  Petitioners did not argue, nor did they provide any evidence, that they expected the assets used in the horse activity to appreciate in value.  This factor favors respondent's position.

### 5. Success With Similar Activities

The fifth factor considers a taxpayer's past success with similar activities.  Ms. Ross admitted she had no prior experience operating a business similar to the horse activity.  She did not submit any evidence that Dr. Phemister had any relevant experience.  This factor is neutral.

### 6. History of Profit or Loss

The sixth factor considers a taxpayer's history of profit or loss from the activity.  A taxpayer's history of profit or loss with respect to any activity may indicate the presence or absence of a profit objective.  See Golanty v. Commissioner, supra at 426; sec. 1.183-2(b)(6), Income Tax Regs.  Where losses continue beyond the period which is customarily necessary to bring an operation to profitable status, it may be an indication that the

activity is not engaged in for profit.  Sec. 1.183-2(b)(6),
Income Tax Regs.

Petitioners sustained losses for 6 consecutive years.  Over
those 6 years, their total losses from the horse activity
exceeded $500,000.  Ms. Ross does not argue that 6 years is an
inadequate period of time to evaluate the activity's potential
for profit.  This factor favors respondent's position.

### 7. Amount of Profits

The seventh factor considers the profits a taxpayer earns
from the activity.  The amount and frequency of occasional
profits earned from an activity may indicate a profit objective.
Sec. 1.183-2(b)(7), Income Tax Regs.  Petitioners never made a
profit from their horse activity.  They reported significant
losses for 6 years and discontinued the horse activity during the
seventh year.  This factor favors respondent's position.

### 8. Taxpayers' Financial Status

The eighth factor deals with the taxpayers' overall
financial status.  Substantial income from sources other than the
activity (especially if the losses from the activity generate
substantial tax benefits) may indicate a lack of profit motive,
particularly where there are elements of personal pleasure or
recreation involved.  See sec. 1.183-2(b)(8), Income Tax Regs.

During the years at issue petitioners reported over $1.9
million of income from Dr. Phemister's wages and business income.

In comparison, during those same years petitioners reported over $500,000 of losses from their horse activity. Petitioners funded their horse activity from Dr. Phemister's substantial income, while reaping significant tax benefits from the losses they reported. This factor favors respondent's position.

### 9. Personal Pleasure or Recreation

The final factor considers the personal pleasure or recreation a taxpayer derives from the activity. The existence of personal pleasure or recreation relating to the activity may indicate the absence of a profit objective. See sec. 1.183-2(b)(9), Income Tax Regs.

Ms. Ross does not argue that petitioners did not derive any personal pleasure or recreation from their horse activity. In addition, the record supports a finding that Ms. Ross derived personal pleasure and recreation from the horse activity. This factor favors respondent's position.

### 10. Conclusion

All of the factors are either neutral or indicate that petitioners did not engage in their horse activity with the intent to make a profit. Therefore, petitioners have not carried their burden of proving they were engaged in the horse activity for profit. After considering the factors listed in section 1.183-2(b), Income Tax Regs., and the facts and circumstances of this case, we conclude that petitioners were not engaged in their

horse activity with a good-faith expectation of realizing a profit. Accordingly, we hold that petitioners' horse activity during the years in issue was an activity not engaged in for profit within the meaning of section 183. We sustain respondent's determinations with respect to petitioners' horse activity.[12]

D. Additions to Tax for Failure To Timely File Tax Returns

Respondent claims that for 1999-2003 petitioners are liable for additions to tax under section 6651(a)(1) because they failed to file timely returns or to show that they had reasonable cause for that failure.

Section 6651(a)(1) imposes an addition to tax for failure to file a return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985). Failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and nevertheless was unable to file the return within the prescribed time. See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure to file or reckless indifference. See United States v. Boyle, supra at 245.

---

[12]Our holding applies to all of respondent's determinations to disallow losses, deductions, and credits attributable to petitioners' horse activity.

Section 7491(c) imposes on the Commissioner the burden of production with respect to additions to tax. In order to meet his burden of production, the Commissioner must come forward with sufficient evidence that it is appropriate to impose the relevant addition to tax or penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, the Commissioner is not required to introduce evidence regarding reasonable cause, substantial authority, or similar defenses. Id. Once the Commissioner meets his initial burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447.

Petitioners do not dispute that they failed to file their 1999-2003 returns timely and therefore respondent has satisfied the initial burden of production with respect to the section 6651(a)(1) additions to tax.

Petitioners did not address this issue at trial. Accordingly, petitioners have failed to satisfy their burden of proving respondent's determination is incorrect, and we sustain respondent's determination with respect to the section 6651(a)(1) additions to tax. See Rules 142(a), 149(b); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

E.  Accuracy-Related Penalty Under Section 6662

Respondent contends that petitioners are liable for the accuracy-related penalty under section 6662 for all years at issue.  Respondent asserts that petitioners are liable for the section 6662 penalty on alternative grounds:  (1) The underpayment resulting from respondent's determinations was attributable to negligence or disregard of rules or regulations within the meaning of section 6662(b)(1); or (2) there was a substantial understatement of income tax within the meaning of section 6662(b)(2).

Section 6662(a) and (b)(1) authorizes the Commissioner to impose a penalty in an amount equal to 20 percent of the underpayment attributable to negligence or disregard of rules or regulations.  Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonably prudent person would do under the circumstances).

Section 6662(a) and (b)(2) authorizes the Commissioner to impose a 20-percent penalty if there is a substantial understatement of income tax.  A substantial understatement of income tax with respect to individual taxpayers exists if the amount of the understatement for the taxable year exceeds 10

percent of the tax required to be shown on the return for the taxable year, or $5,000, whichever is greater.  Sec. 6662(d)(1)(A).

The Commissioner bears the initial burden of production with respect to a taxpayer's liability for the section 6662 penalty, in that the Commissioner must first produce sufficient evidence to establish that the imposition of the section 6662 penalty is appropriate.  Sec. 7491(c); Kikalos v. Commissioner, 434 F.3d 977, 986 (7th Cir. 2006), affg. T.C. Memo. 2004-82.  If the Commissioner satisfies his initial burden of production, the burden of producing evidence to refute the Commissioner's evidence and to establish that the taxpayers are not liable for the section 6662 penalty shifts to the taxpayers.  See Higbee v. Commissioner, supra at 447.

Respondent has satisfied his burden by showing that for each year at issue the amount of understatement exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return.  Respondent has also met his burden of production with respect to negligence by establishing that petitioners did not maintain required records or substantiate deductions as required by the Code.  See Kikalos v. Commissioner, supra at 986.

Petitioners did not address this issue at trial.  Accordingly, petitioners have failed to satisfy their burden of proving respondent's determination is incorrect, and we sustain

respondent's determination on the accuracy-related penalties. See Rules 142(a), 149(b); Petzoldt v. Commissioner, supra at 683; Money v. Commissioner, supra at 48.

## II.  Section 6015 Relief

In general, married taxpayers who file a joint Federal income tax return for a taxable year are jointly and severally liable for the full amount of that year's tax liability.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Under section 6015, however, a spouse may obtain relief from joint and several liability if the spouse satisfies certain requirements.[13]

Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax on a joint return). Section 6015(a)(2) provides that a spouse who is eligible to do so may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c).  If complete relief is not available under section 6015(b) or (c), an individual may seek equitable relief under section 6015(f).

---

[13]Sec. 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, but remaining unpaid as of such date.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.

At trial Ms. Ross asserted a claim for relief under section 6015(b), (c), or (f)[14] as an affirmative defense.[15]  We have jurisdiction to review Ms. Ross' affirmative defense that she is entitled to section 6015 relief.  See secs. 6212-6214; Charlton v. Commissioner, 114 T.C. 333, 342 (2000); Butler v. Commissioner, supra at 287-292.

A.  Section 6015(b)

Section 6015(b)(1) authorizes respondent to grant relief from joint and several liability if the taxpayer satisfies each requirement of subparagraphs (A) through (E).  Section 6015(b)(1) provides:

> SEC. 6015(b).  Procedures For Relief From Liability Applicable to All Joint Filers.--
>
> (1) In general.--Under procedures prescribed by the Secretary, if--

---

[14]A spouse or former spouse who is not a party to a deficiency proceeding in which a claim for relief under sec. 6015 is raised has the right to intervene in the proceeding.  Van Arsdalen v. Commissioner, 123 T.C. 135, 143 (2004); King v. Commissioner, 115 T.C. 118, 122-123 (2000).  Dr. Phemister is a party and not an intervenor.  Consequently, procedures related to participation by an intervenor do not apply.  See Rule 325.  Dr. Phemister had notice that Ms. Ross was asserting a claim for relief under sec. 6015 as an affirmative defense in the deficiency proceeding, and he did not appear at trial to challenge Ms. Ross' request for relief.  We assume, therefore, that Dr. Phemister does not oppose Ms. Ross' request for sec. 6015 relief.

[15]Although Ms. Ross did not raise her claim in her petition, the issue was tried by the consent of the parties.  Rules 39, 41(b)(1).

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all of the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

The requirements of section 6015(b)(1) are stated in the conjunctive. Thus, if the requesting spouse fails to meet any one of them, she does not qualify for relief. Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). Except as provided by section 6015,[16] the

---

[16]If a spouse requests relief under sec. 6015(c), the Commissioner bears the burden of proving that assets have been
(continued...)

requesting spouse bears the burden of proving that she satisfies each requirement of section 6015(b)(1).  See Rule 142(a).

In order to make relief from joint and several liability more accessible, Congress repealed section 6013(e) and enacted section 6015 in 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), (e)(1), 112 Stat. 734, 740; H. Conf. Rept. 105-599, at 249 (1998), 1998-3 C.B. 747, 1003.  Section 6015(b)(1) is similar to former section 6013(e)(1).  In analyzing section 6015(b)(1), we may look to cases interpreting former section 6013(e)(1) for guidance.  See Cheshire v. Commissioner, 115 T.C. 183, 189 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, supra at 283.

Respondent concedes that Ms. Ross meets the requirements in subparagraphs (A) and (E) of section 6015(b)(1) but argues that she is not entitled to relief for any tax liability attributable to the horse activity and ER physician business because she does not meet the other requirements under section 6015(b)(1).[17]  With respect to the horse activity, respondent contends that Ms. Ross has not satisfied the requirements of subparagraphs (B), (C), and

---

[16](...continued)
transferred between former spouses as part of a fraudulent scheme and that the spouse requesting relief had actual knowledge of a deficiency.  Sec. 6015(c)(2), (3)(A)(ii), (C).

[17]Respondent does not assert that Ms. Ross is not qualified for relief with respect to understatements of tax attributable to any other items of income, deduction, or credit on the joint returns.

(D) of section 6015(b)(1), and with respect to the ER physician business, we interpret respondent's argument to be an assertion that Ms. Ross has not met the requirements of subparagraphs (C) and (D).[18]

Petitioners' deficiencies are partly attributable to their claimed horse-activity losses. We have held that petitioners are not entitled to deduct those losses. The record reflects that Ms. Ross was the individual primarily involved in the horse activity. Because the claimed losses from the horse activity are not attributable to the nonrequesting spouse, Ms. Ross does not satisfy subparagraph (B) of section 6015(b)(1).[19] Accordingly, we hold that she does not qualify for relief under section 6015(b) with respect to the understatement attributable to the horse activity.

We turn now to that part of the understatement attributable to disallowed deductions claimed with respect to Dr. Phemister's ER physician business. We sustained respondent's determination regarding the disallowed expenses. To qualify for relief under section 6015(b) with respect to the disallowed expenses, Ms. Ross

---

[18]On brief respondent conceded that the ER physician business was solely attributable to Dr. Phemister.

[19]Ms. Ross also fails to satisfy subpar. (C) of sec. 6015(b)(1). Because she participated in the horse activity, she had actual knowledge of the items giving rise to the understatements of tax.

must prove that she satisfies the requirements of subparagraphs (C) and (D).

With respect to subparagraph (C), Ms. Ross must establish that she neither knew of nor had reason to know of the erroneous deductions.  Respondent does not argue, and the record does not reflect, that Ms. Ross had actual knowledge of these erroneous deductions.[20]  Consequently, we focus our analysis with respect to section 6015(b)(1)(C) on whether Ms. Ross had reason to know of the erroneous deductions.

In an opinion discussing the knowledge requirement of former section 6013(e)(1), the Court of Appeals for the Seventh Circuit adopted the "reason to know" standard used in Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989).  See Resser v. Commissioner, 74 F.3d 1528, 1535-1536 (7th Cir. 1996), revg. and remanding T.C. Memo. 1994-241.  Under the Price standard as adopted by the Court of Appeals, a taxpayer has reason to know of an understatement if at the time the taxpayer signed the return the taxpayer possessed enough knowledge of the facts underlying the claimed deductions that it would have caused a reasonably prudent taxpayer in the taxpayer's position to question the legitimacy of the deductions.  Resser v. Commissioner, supra at 1536 (citing Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th

_____

[20]At trial Ms. Ross credibly testified that she had no involvement in the maintenance of records for Dr. Phemister's ER physician business or in the preparation of the returns.

Cir. 1989), affg. T.C. Memo. 1988-63). If we find that Ms. Ross had reason to know, then she had a "duty to inquire further", Resser v. Commissioner, supra at 1536, and if she failed to satisfy that duty, we impute to her constructive knowledge of the understatements attributable to the erroneous deductions, id. at 1541.

We consider several factors when assessing whether a spouse had reason to know, including "the spouse's level of education; the spouse's involvement in the financial and business activities of the family; any substantial unexplained increase in the family's standard of living; and the culpable spouse's evasiveness and deceit about the family's finances." Id. at 1536. No single factor is controlling. We must decide whether a spouse had reason to know "by considering the interplay or balance of the factors". Id.

Ms. Ross spent almost all of her married life at home with her children. She had no substantive involvement in Dr. Phemister's ER physician business during the years at issue. She credibly testified that she did not help Dr. Phemister maintain books and records for his business and that she was not involved in preparing the Schedules C for the ER physician business. In addition, there is no evidence that the family's lifestyle changed as a result of Dr. Phemister's unsubstantiated deductions.

On the other hand, Ms. Ross is a high school graduate who completed a few college-level courses. She had some experience working as a medical assistant, although we infer from the record that her work probably occurred during the 1980s when she assisted Dr. Phemister with his ER physician business. At trial Ms. Ross admitted she realized Dr. Phemister was not a diligent recordkeeper, but it is unclear whether her admission reflected knowledge she gained after respondent audited petitioners' tax returns or whether she had some awareness of his inadequate recordkeeping when she signed their returns.[21] She participated in some aspects of the family's financial affairs; for example, she paid many of the household bills from a joint checking account she shared with Dr. Phemister.

On balance we are satisfied that on the dates she signed the relevant returns Ms. Ross did not have sufficient knowledge of the underlying facts to cause a prudent person in her position to question whether the deductions Dr. Phemister claimed with respect to his ER physician business were erroneous. Because she

---

[21]We note that respondent's audit was commenced in March 2004 after petitioners' 1999 and 2000 returns were filed. Their 2001 return was filed shortly after the audit began, and their 2002 return was filed a few months later. The audit was in a preliminary, information-gathering stage when it was transferred to another auditor in October 2004. It was not until September 2005 that respondent began requesting more documents from petitioners for their claimed Schedule C and horse-activity deductions. Two months later Ms. Ross filed for legal separation from Dr. Phemister. Petitioners' 2003 and 2004 returns were filed shortly thereafter.

lacked such knowledge regarding the erroneous deductions, she did not have a duty to inquire under Price v. Commissioner, supra at 965-966. We conclude, therefore, that Ms. Ross satisfies the requirements of section 6015(b)(1)(C).

Finally, we consider whether Ms. Ross satisfies the requirements of section 6015(b)(1)(D), which requires us to evaluate whether it is inequitable to hold Ms. Ross liable for the deficiencies in tax attributable to Dr. Phemister's ER physician business. During the years at issue Ms. Ross had no meaningful involvement with Dr. Phemister's ER physician business and did not participate in any aspect of his business, including his recordkeeping. The adjustments with respect to the ER physician business are the result of Dr. Phemister's failure to substantiate the expenses that he claimed on his returns. Respondent makes no allegation that the expenses were fraudulent or that the ER physician business did not have expenses during the years before us.

While it is clear that income from Dr. Phemister's business supported Ms. Ross and her family and was a substantial funding source for the horse activity, Dr. Phemister's income exceeded his expenses in each of the years at issue and would have been a source of support regardless of whether respondent disallowed the expenses of his ER physician business. Consequently, we cannot

conclude as respondent contends that the disallowed expenses resulted in any meaningful financial benefit to Ms. Ross beyond normal support.

After taking into account all of the facts and circumstances that may be drawn from the record, we conclude that it would be inequitable to hold Ms. Ross liable for the deficiencies in tax attributable to Dr. Phemister's ER physician business.

Because Ms. Ross satisfies all of the requirements for relief under section 6015(b) with respect to the understatements of tax resulting from the disallowance of the ER physician business' expense deductions, we hold that she is entitled to relief under section 6015(b).

B. Section 6015(c)

Under section 6015(c), if the requesting spouse is no longer married to or is legally separated from the spouse with whom she filed the joint return, the requesting spouse may elect to limit her liability for a deficiency as provided in section 6015(d).[22] Sec. 6015(c)(1), (3)(A)(i)(I).  In general, section 6015(d) provides that any item giving rise to a deficiency on a joint

_____

[22]An election under sec. 6015(c) for any taxable year may be made at any time after a deficiency is asserted but not later than 2 years after the date on which the Secretary has begun collection activities with respect to the individual making the election.  Sec. 6015(c)(3)(B).  Respondent has not raised any issue regarding the timeliness of Ms. Ross' election under sec. 6015(c).  On the basis of the record, we conclude that her election was timely.

return shall be allocated to the spouses as though they had filed separate returns, and the requesting spouse shall be liable only for his or her proportionate share of the deficiency that results from such allocation.[23] Sec. 6015(d)(1), (3)(A). Unallowable deductions and omitted income items attributable to a business are allocated to the spouse who owned the business. Sec. 1.6015-3(d)(2)(iii) and (iv), Income Tax Regs. However, to the extent that an item giving rise to a deficiency provided a tax benefit on the joint return to the other spouse, that item shall be allocated to the other spouse in computing his or her proportionate share of the deficiency. Sec. 6015(d)(3)(B); Hopkins v. Commissioner, 121 T.C. 73, 83-86 (2003). The spouse who makes the section 6015(c) election bears the burden of proving the portion of the deficiency that is properly allocable to that spouse. See sec. 6015(c)(2).

Ms. Ross is eligible to request relief under section 6015(c) because she and Dr. Phemister were divorced when she made her election, see sec. 6015(c)(3)(A), and her election is not invalidated by section 6015(c)(3)(A)(ii). However, respondent argues, and we agree, that Ms. Ross does not qualify for section

---

[23]In addition, the requesting spouse's proportionate share of the deficiency shall be increased by the value of any disqualified asset transferred to her by the nonrequesting spouse. Sec. 6015(c)(4). Respondent has not argued, and there is no evidence, that any disqualified assets were transferred between Ms. Ross and Dr. Phemister.

6015(c) relief with respect to that part of the deficiencies attributable to petitioners' horse activity.

An election under section 6015(c) is ineffective with respect to any portion of a deficiency if the Commissioner proves by a preponderance of the evidence that the requesting spouse had actual knowledge, when signing the return, of an item giving rise to a deficiency that is otherwise allocable to the nonrequesting spouse.[24]  Sec. 6015(c)(3)(C); Hopkins v. Commissioner, supra at 86.  In cases involving erroneous deductions, a spouse is deemed to have actual knowledge of an item giving rise to a deficiency if she has actual knowledge of the factual circumstances that made the deductions unallowable.  King v. Commissioner, 116 T.C. 198, 204 (2001).

Although the horse activity was one in which both Ms. Ross and Dr. Phemister participated and any items attributable to the activity would normally be allocable at least in part to Dr. Phemister,[25] we conclude that when she signed the tax returns Ms.

---

[24]An election under sec. 6015(c) is also invalid if the Secretary demonstrates that assets were transferred between the individuals filing the joint return as part of a fraudulent scheme.  Sec. 6015(c)(3)(A)(ii).  Respondent has not argued, and there is no evidence, that assets were transferred as part of a fraudulent scheme.

[25]In fact, because of the benefit rule of sec. 6015(d)(3)(B), the deficiencies (or a substantial percentage thereof) attributable to the disallowance of the horse activity deductions and losses might have been allocable to Dr. Phemister but for the fact that respondent demonstrated Ms. Ross had actual

(continued...)

Ross possessed actual knowledge of the factual circumstances that made the deductions and resulting losses claimed with respect to the horse activity unallowable.  See sec. 6015(c)(3)(C).  Ms. Ross ran the day-to-day operations and was responsible for maintaining records with respect to the activity.  She was well aware of all of the facts, including the defective recordkeeping, that lead us to conclude, _infra_, the horse activity was not an activity for profit.  Therefore, we hold that Ms. Ross' election under section 6015(c) does not apply to that part of the deficiencies attributable to the horse activity.[26]

Respondent also argues that Ms. Ross does not qualify for section 6015(c) relief with respect to that part of the deficiencies attributable to Dr. Phemister's disallowed ER physician business deductions.  We find that Dr. Phemister was the owner of this business and that the income and allowable deductions associated with this business are allocable solely to him.  Accordingly, to prevent an allocation under section 6015(c) and (d), respondent must prove that Ms. Ross had actual knowledge

---

[25](...continued) knowledge at the time she signed the returns of the items giving rise to those deficiencies.  See _Hopkins v. Commissioner_, 121 T.C. 73, 83-86 (2003); sec. 1.6015-3(d)(5), _Example_ (5), Income Tax Regs.

[26]Accuracy-related penalties under sec. 6662 are allocated to the individual whose activity generated the penalty.  Sec. 1.6015-3(d)(4)(iv)(B), Income Tax Regs.  Accordingly, Ms. Ross cannot avoid liability for the penalties arising from petitioners' horse activity.

of the unallowable deductions when she signed the returns.  Sec. 6015(c)(3)(C).  Respondent did not do so.

In Sowards v. Commissioner, T.C. Memo. 2003-180, the taxpayer sought relief from liabilities arising from unsubstantiated deductions her husband claimed with respect to his legal practice.  We found, as we do here, that the Commissioner failed to prove that the requesting spouse had actual knowledge that the other spouse's business deductions were not allowable.  Like the taxpayer in Sowards, Ms. Ross had no involvement with Dr. Phemister's ER physician business.  She did not know who kept his books and records, and there is no evidence she reviewed any of his claimed deductions.  She knew only that he supplied his business' books and records to an accountant who used them to prepare petitioners' returns.

On this record we conclude that respondent has not proven actual knowledge.  Consequently, we hold that Ms. Ross' election is valid with respect to that part of the deficiencies attributable to items involving Dr. Phemister's ER physician business, which are allocable to Dr. Phemister under section 6015(d).[27]

_____

[27]Respondent does not argue that Ms. Ross does not qualify for relief under sec. 6015(c) with respect to other items in the notice of deficiency not specifically discussed in this opinion and has not shown that Ms. Ross had actual knowledge of such items.  Therefore, Ms. Ross is entitled to relief under sec. 6015(c) for any deficiency attributable to the other items to the
(continued...)

C. Section 6015(f)

Section 6015(f) provides an alternative means of relief for a requesting spouse who does not otherwise qualify for relief under subsection (b) or (c) of section 6015. Sec. 6015(f)(2). Because we have not relieved Ms. Ross of all liability for the deficiencies, we consider whether Ms. Ross is entitled to any additional relief under section 6015(f).

Section 6015(f) permits relief from joint and several liability where "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1). Under section 6015(f), the Secretary may grant equitable relief to a requesting spouse on the basis of the facts and circumstances of the requesting spouse's case. Respondent asserts that Ms. Ross does not satisfy the conditions for granting relief under section 6015(f) as delineated in the administrative procedures found in Rev. Proc. 2003-61, 2003-2 C.B. 296.

Pursuant to section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, supra, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447, to be considered in determining whether an individual qualifies for relief under

---

[27](...continued)
extent they are allocable to Dr. Phemister. We expect the parties to resolve the exact allocation as part of the Rule 155 computation. See Hopkins v. Commissioner, supra at 87.

section 6015(f).[28]  Where a request for relief under section 6015(f) is raised as an affirmative defense, this Court applies these guidelines.  See, e.g., Rowe v. Commissioner, T.C. Memo. 2001-325.

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, lists seven conditions, all of which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  One of the threshold conditions is that the item for which the spouse requests relief, absent certain exceptions, must be attributable to the other spouse.  Id. sec. 4.01(7).

Ms. Ross is deemed to have amended her petition to raise her claim for relief under section 6015(f).  Respondent opposes Ms. Ross' request for equitable relief with respect to the horse activity, claiming Ms. Ross does not meet the threshold requirements.

We agree with respondent that it would not be inequitable to hold Ms. Ross liable for the deficiencies arising from the horse activity.  As we discussed previously, the horse activity is not solely attributable to Dr. Phemister, and Ms. Ross was involved with the daily operations of that activity.  We conclude that Ms.

---

[28]The guidelines set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296, are effective for requests for relief filed, as in the instant case, on or after Nov. 1, 2003.  Id. sec. 7, 2003-2 C.B. at 299.

Ross is not eligible for relief under section 6015(f) from deficiencies attributable to petitioners' horse activity.

D. Conclusion

We grant Ms. Ross relief under section 6015(b) with respect to the understatements attributable to Dr. Phemister's ER physician business, and we conclude that she is entitled to an allocation under section 6015(c) as indicated herein. We deny her relief with respect to understatements attributable to petitioners' horse-activity losses, finding she did not qualify for relief under section 6015(b), (c), or (f). Consequently, Ms. Ross remains jointly and severally liable for any deficiencies in tax, additions to tax, and penalties attributable to the horse-activity losses and any other portions of the deficiencies in tax, additions to tax, and penalties which are not allocable to Dr. Phemister under section 6015(c). See supra note 25.

To reflect the foregoing,

Decision will be entered

under Rule 155.